# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 4, 2010

No. 08-30419

Charles R. Fulbruge III
Clerk

KEITH MARK DILLON

Plaintiff-Appellant

v.

BRAD ROGERS; T.W. THOMPSON; SERGEANT EDWARDS; SERGEANT
WALKER; DEPUTY HARTZGLOU; LIEUTENANT HOLLIFIELD; THOMAS
PIETSCH

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Louisiana

Before BENAVIDES, DENNIS, ELROD, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

Appellant Keith Mark Dillon appeals from the dismissal on summary judgment of his suit under 42 U.S.C. § 1983 for abuse he allegedly suffered while being held as a prisoner in Jena, Louisiana. For the reasons described below, we vacate the judgment of the district court and remand for further development of the record in this case.

I.

On August 29, 2005, when Hurricane Katrina made landfall in southeastern Louisiana, Dillon was being held as a prisoner at the Jefferson Parish Correctional Center ("Jefferson"), within the New Orleans metropolitan

No. 08-30419

area.    Due to the devastation caused by the hurricane, the Louisiana Department of Public Safety and Corrections ("DPSC") evacuated Dillon and other inmates from Jefferson on August 31, 2005 and moved them to a temporary facility in Jena, Louisiana ("Jena").  Dillon alleges that he was beaten and mistreated by Appellees in late September 2005 during his detention at Jena, resulting in hearing loss and other injuries.  Shortly after this alleged abuse, in early October 2005, DPSC transferred Dillon to Allen Correctional Center ("Allen") in Kinder, Louisiana, and the temporary facility at Jena closed.

In July 2006, Dillon filed this section 1983 suit alleging violations of his civil rights during his incarceration.  He proceeded *pro se* until late March 2007, after which he was represented by counsel.  In November 2007, Appellees filed a motion to dismiss Dillon's suit for failure to exhaust administrative remedies, and shortly thereafter the magistrate judge hearing this case recommended that Appellees' motion be granted.    However, the district court rejected the magistrate's recommendation and under Rule 12(d) converted Appellees' motion into a motion for summary judgment, as the parties had submitted evidence with their briefing going beyond the factual allegations in their pleadings.  Subsequently, the district court granted summary judgment for Appellees in March 2008, on the ground that Dillon had failed to exhaust administrative remedies before bringing this suit.  This appeal followed.

## II.

Under the Prison Litigation Reform Act ("PLRA"), prisoners must properly exhaust "such administrative remedies as are available" prior to filing a section 1983 action concerning prison conditions.  42 U.S.C. § 1997e(a) (2006); *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006).  Louisiana has a two-step Administrative Remedy Procedure ("ARP") for inmates, which they are required to use before filing suit in district court. La. Admin. Code tit. 22, § 325(A) (2009).  Generally, the inmate commences the first step of the grievance process by writing a letter

No. 08-30419

to the warden of his or her institution briefly setting out the basis for his or her claim and the relief sought. § 325(G)(1)(a). The grievance letter should be written within 90 days of the alleged event that is the subject of the complaint. *Id.* The Warden has 40 days from the day the grievance is received to respond to the request. *Id.* If following transfer to a new institution, the inmate files a grievance regarding an action taken by his or her former institution, the former institution "will complete the processing through the first step." § 325(G)(8). Furthermore, "[i]f the inmate believes the complaint is sensitive and would be adversely affected if the complaint became known at [his or her] institution," he or she may skip the first step and file his or her complaint directly with Louisiana's Assistant Secretary of Adult Services. § 325(G)(6)(a).

The inmate may proceed to the second step of the ARP by appealing to the Secretary of the DPSC if he or she is dissatisfied with the first step response. § 325(G)(2)(a). If the inmate never receives a response to a first step grievance, then he or she is entitled to proceed to the second step of the process upon the expiration of the first step response time limit. § 325(G)(4)(a). If the inmate is not satisfied with the second step response, he or she may then file suit in district court. § 325(G)(2)(b).

## III.

"We review the grant of summary judgment *de novo*, applying the same standards as the district court." *In re Egleston*, 448 F.3d 803, 811-12 (5th Cir. 2006) (internal quotations omitted). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "We construe all facts and inferences in the light most favorable to the nonmoving party when reviewing grants of motions for summary judgment." *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005). Whether a prisoner has exhausted administrative

3

No. 08-30419

remedies is a mixed question of law and fact. *Carty v. Thaler*, 583 F.3d 244, 252 (5th Cir. 2009). Similarly, while it is a question of law whether administrative remedies qualify as being "available" under 42 U.S.C. § 1997e(a), availability may sometimes turn on questions of fact. *See Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999).

Since exhaustion is an affirmative defense, the burden is on Appellees to demonstrate that Dillon failed to exhaust available administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Consequently, Appellees must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).

## A.

Dillon does not seriously dispute that he failed to satisfy the steps of the ARP that are prerequisite to filing a section 1983 action. Rather, he argues that his suit should not be barred because there was no remedy "available" to him during the 90-day period following the alleged abuse. Alternatively, he also argues his failure to exhaust should be excused on the basis of estoppel or the "special circumstances" surrounding his detention at Jena.

In opposition to Appellees' various motions seeking to dismiss this case, Dillon submitted affidavits alleging that no administrative grievance procedures were available to prisoners at Jena and that prisoners were explicitly told not to submit grievances. Dillon asserts that when he sought to file an administrative complaint at Jena after he was abused in late September 2005, Appellee Brad Rogers ordered him to kneel down for approximately an hour and told him to "forget" about filing a grievance. He also claims that guards checked prisoners' outgoing mail and destroyed writings detailing abuses, blocking him from filing a "sensitive issues" grievance under La. Admin. Code tit. 22, § 325(G)(6)(a). Nevertheless, Dillon did give a visiting lawyer a hand-written

4

grievance, which he expected the lawyer to deliver to the DPSC. Dillon discovered after he had filed suit that the lawyer had failed to forward the grievance to the DPSC.

After the DPSC transferred Dillon to Allen in early October 2005, the 90-day period during which he could have filed a grievance under section 325(G)(1)(a) had not yet elapsed and would not do so until late December. However, Dillon alleges that Allen's Captain Wheaton and inmate counsel Dennis Coleman told him that he could not file an administrative grievance at Allen for abuse suffered at Jena. Nevertheless, Dillon claims to have submitted several grievances at Allen, requesting medical treatment for injuries sustained at Jena and inquiring whether he was actually barred from filing a grievance at Allen for abuse at Jena. Even if these grievances filed at Allen could qualify as "first step" grievances applicable to the claims advanced in this suit, Dillon never pursued them to the "second step" of the ARP process under section 325(G)(4)(a).

B.

Dillon argues this suit may proceed because there were no administrative remedies "available" to exhaust at Jena and Allen. When "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint," exhaustion is not required under the PLRA because there is no "available" remedy. *Booth v. Churner*, 532 U.S. 731, 736 (2001); *see also Days v. Johnson*, 322 F.3d 863, 867-68 (5th Cir. 2003) (per curiam) (finding remedy "unavailable" when prisoner's injury prevented him from filing grievance), *overruled by implication on other grounds by Jones*, 549 U.S. at 216.[1] We are unable to determine whether administrative remedies were

---

[1]    Of course, an administrative remedy does not become unavailable simply because a prisoner has not timely or properly filed a grievance and is consequently later barred from seeking further administrative relief. *See Woodford*, 548 U.S. at 83-84.

"available" for Dillon because the record was not sufficiently developed when the district court granted summary judgment for Appellees.

The district court did not address whether any administrative remedies were available to Dillon at Jena, instead focusing its analysis on whether remedies were available at Allen. We agree with the district court that the focus should be on availability at Allen—if remedies were available to Dillon at Allen, their unavailability at Jena would not suffice to excuse his failure to exhaust. Dillon was allegedly beaten at Jena in late September 2005 and was transferred in early October 2005. When he arrived at Allen, he could have filed a timely grievance for mistreatment at Jena anytime before late December 2005. *See* La. Admin. Code tit. 22, § 325(G)(1)(a) (establishing 90-day deadline for filing grievance following incident). If impediments to filing grievances render remedies unavailable at one facility, remedies may become available again once a prisoner has been transferred, unless there are other problems at the new facility. *See Bryant v. Rich*, 530 F.3d 1368, 1379 (11th Cir. 2008).

Consequently, we turn to assessing the availability of remedies at Allen. Dillon raises two arguments concerning availability at Allen. First, he contends that the closure of Jena resulted in the unavailability of administrative remedies at Allen. Section 325(G)(8) provides that "if [an inmate] files a request after transfer on an action taken by the sending institution, the sending institution will complete the processing through the first step." La. Admin. Code tit. 22, § 325(G)(8). Since Jena closed after Dillon's transfer, he asserts Jena could not "complete the processing" of his grievance, and therefore there was no administrative remedy available to him at Allen for the abuse he suffered at Jena.

Second, Dillon argues that his failure to exhaust should be excused because Captain Wheaton and inmate counsel Dennis Coleman allegedly told him that he could not file a grievance at Allen for abuse suffered at Jena. While

Dillon styles this as an estoppel argument, these statements by Wheaton and Coleman could conceivably impact whether any remedies were "available" to Dillon under 42 U.S.C. § 1997e(a). *See Brown v. Croak*, 312 F.3d 109, 112-13 (3d Cir. 2002) (concluding that statements by prison officials about administrative remedy process may render remedies unavailable). The district court rejected Dillon's assertion that these statements excuse exhaustion, relying on *Lyon v. Vande Krol*, where the Eighth Circuit held that a prisoner's mistaken "subjective" understanding of a grievance procedure is irrelevant for determining whether remedies are actually available. 305 F.3d 806, 809 (8th Cir. 2002). The district court also found that allowing Dillon to rely on Wheaton's and Coleman's statements would be inconsistent with this circuit's "strict" approach to the PLRA's exhaustion requirement. *See Days*, 322 F.3d at 866 (citing *Richardson v. Spurlock*, 260 F.3d 495, 499 (5th Cir.2001) and *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir.2001)). Under our strict approach, we have found that mere "substantial compliance" with administrative remedy procedures does not satisfy exhaustion; instead, we have required prisoners to exhaust available remedies properly. *See Wright*, 260 F.3d at 358; *Spurlock*, 260 F.3d at 499. However, our strict approach does not absolutely foreclose the possibility that prison officials' statements concerning administrative remedies can render such remedies unavailable. We have long recognized the importance of ensuring that inmates have avenues for discovering the procedural rules governing their grievances, *see Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir. 2003) (per curiam) (premising ruling that remedies were available on prisoner's knowledge of grievance procedures); *Ferrington v. La. Dep't of Corrs.*, 315 F.3d 529, 532 (5th Cir. 2002) (per curiam) (premising ruling that remedies were available on fact that prisoner "was well aware of the general procedural requirements described in the inmate handbook"), as has the Eighth Circuit. *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (premising ruling that

remedies were available on prisoners' admission of receipt of prisoner guidebook and guidebook's explanation of "the applicable grievance procedure and its application to all aspects of inmate life"). When a prisoner has no means of verifying prison officials' claims about the administrative grievance process, incorrect statements by officials may indeed make remedies unavailable.

Unfortunately, we are unable to determine whether the district court's grant of summary judgment was appropriate, as no discovery has been conducted in this case and the record is fragmentary as a result. First, there is not enough evidence in the record concerning what Dillon knew or could have discovered about the ARP system for us to determine whether Wheaton's and Coleman's alleged statements made remedies unavailable. Since Dillon filed grievances at Allen and asked the lawyer visiting Jena to mail a grievance directly to the DPSC, it is clear that Dillon had some understanding of the ARP system. What is less clear is what Dillon knew or could have discovered about the proper manner to proceed with a grievance regarding events at Jena after its closure and his transfer. The record does not contain a copy of the Allen inmate handbook or other guides to the ARP system that Dillon could have relied on instead of Wheaton and Coleman. The record does indicate that upon incarceration, prison officials usually describe the ARP system to new inmates at orientation. However, before Katrina, Dillon was incarcerated at Jefferson, a parish facility, and the record suggests that DPSC facilities like Allen could have different grievance procedures than parish facilities do. Without a firmer grip on what Dillon could have discovered about the truth of Wheaton's and Coleman's claims in materials like an inmate handbook, we cannot determine if summary judgment was warranted.

Second, during oral argument, we questioned Appellees' counsel about the applicability in this situation of section 325(G)(8)'s directive that a "first step" grievance concerning Jena should be processed at Jena. In response, counsel

No. 08-30419

stated that the DPSC was operating under "emergency procedures" while Dillon was incarcerated at Jena and Allen, and that consequently the DPSC "could suspend any rules as necessary" during this period, such as the rule that Jena process all "first step" grievances from transferred inmates. Since the record does not clearly establish whether this provision was in force while Dillon was at Allen, we find it inappropriate at this time to rule on its meaning. *Cf. Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 527-29 (5th Cir. 1982) (concluding that summary judgment was "inappropriate" because record did not contain complete copy of collective bargaining agreement being interpreted).

These problems notwithstanding, Appellees assert that there is sufficient evidence in the record to demonstrate that administrative remedies were available at Allen. Specifically, they point to DPSC records showing that from the date of Dillon's transfer to Allen in early October 2005 until the date this suit was filed in July 2006, 53 evacuee-inmates at Allen filed grievances. During the same period, DPSC headquarters directly received five grievances from evacuee-inmates. While this evidence demonstrates that Katrina and Rita evacuees did file grievances while at Allen, and that they also sent grievances directly to DPSC headquarters, there is no indication that any of these grievances concerned events that took place at Jena and, even if they did, that any remedy was available in light of the facility's closure. Due to the fragmentary nature of the record, we direct the district court to permit Dillon to conduct discovery concerning exhaustion and the availability of administrative remedies.

## C.

In addition to arguing that administrative remedies were unavailable, Dillon contends that Appellees should be estopped from raising the defense of

exhaustion. Specifically, he points to his treatment at Jena, where Appellee Brad Rogers allegedly ordered Dillon to kneel in Rogers' office until he "forgot" about filing a grievance, and where corrections officials allegedly destroyed all outgoing mail containing grievances. Also, as another basis for estoppel, Dillon relies on the alleged advice from Wheaton and Coleman indicating that filing a grievance at Allen for problems at Jena was not possible.

"Estoppel is an equitable doctrine invoked to avoid injustice in particular cases," and "a hallmark of the doctrine is its flexible application." *Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 59 (1984). In a number of PLRA cases, we have held that estoppel provides a basis for excusing a prisoner's failure to exhaust administrative remedies. *See, e.g., Days*, 322 F.3d at 866; *Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir. 1998), *overruled by implication on other grounds by Jones*, 549 U.S. at 216. However, in this case, we conclude that estoppel is not appropriate. A party claiming estoppel must, among other things, demonstrate that he or she "reasonably relied on the conduct of the other to his [or her] substantial injury." *Mangaroo v. Nelson*, 864 F.2d 1202, 1204 (5th Cir. 1989). In this case, Dillon cannot show detrimental reliance on the alleged interference with the ARP process at Jena because it was not the cause of his inability after his transfer to file a grievance concerning his treatment at Jena. Furthermore, although the alleged statements by Wheaton and Coleman may well have rendered remedies unavailable, as described above, they cannot estop Appellees. Neither Wheaton nor Coleman are defendants in this case, and Appellees are being sued in their individual capacities. *See Macias v. Zenk*, 495 F.3d 37, 45-46 (2d Cir. 2007) (noting that "depending on the facts pertaining to each defendant, it is possible that some individual defendants may be estopped, while others may not be" (quoting *Hemphill v. New York*, 380 F.3d 680, 689 (2d Cir. 2004)); *Sur v. Glidden-Durkee*, 681 F.2d 490, 493 (7th Cir. 1982) (explaining that each defendant "may be estopped . . . only by reason of its

own actions"). Consequently, Appellees are not estopped from raising exhaustion as an affirmative defense.

## D.

Finally, Dillon asserts that his failure to exhaust should be excused because of this case's "special circumstances," namely Hurricane Katrina, his evacuation to Jena, the ad-hoc arrangements surrounding his detention at the temporary facility, and the alleged abuse of prisoners there. While Dillon's allegations, if true, indicate that conditions at Jena were reprehensible, we do not believe this grants us license to carve out new exceptions to the PLRA's exhaustion requirement, an area where our authority is constrained. *Cf. Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir. 2002) (finding that PLRA forbids courts from recognizing "undue prejudice" exception to PLRA's exhaustion requirement). To the extent that Hurricane Katrina and its aftermath disrupted Louisiana's ARP system, we believe such issues can be addressed by analyzing whether any administrative remedies are "available" under section 1997e(a).

## IV.

Since we remand this case, we must also address the procedure by which the district court should resolve disputes pertaining to exhaustion of administrative remedies. When Appellees filed their motion to dismiss for failure to exhaust administrative remedies, they attached affidavits and records in support of the factual claims in their motion. Dillon responded in kind, providing several affidavits and copies of grievances to support his motion opposing Appellees' motion to dismiss. Faced with this evidence going beyond the facts alleged in the parties' pleadings, the district court converted Appellees' motion to dismiss into a motion for summary judgment. Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." As noted above, on summary judgment,

11

all facts and inferences must be construed in the light most favorable to the nonmoving party. *Murray*, 405 F.3d at 284.

Appellees argue, however, that the district court should not have converted their motion. Instead, they assert that the court should have ruled on their motion to dismiss and, if necessary, resolved any factual disputes concerning exhaustion on the basis of the evidence before it. In support of this position, Appellees point to the decisions of three of our sister circuits in *Pavey v. Conley*, 544 F.3d 739, 741-42 (7th Cir. 2008), *Bryant v. Rich*, 530 F.3d at 1373-77, and *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003). In these cases, the Seventh, Ninth, and Eleventh Circuits all agreed that judges may resolve factual disputes concerning exhaustion of remedies without the participation of a jury. However, they diverged as to the proper procedure for deciding these questions. In both *Wyatt* and *Bryant*, the Ninth and Eleventh Circuits held that exhaustion should be resolved via an "unenumerated" Rule 12(b) motion rather than on a motion for summary judgment. 315 F.3d at 1119; 530 F.3d at 1374-75. On the other hand, in *Pavey*, the Seventh Circuit suggested that summary judgment provides a proper vehicle for settling exhaustion disputes. 544 F.3d at 741.

We agree with our sister circuits that factual disputes concerning exhaustion may be resolved by judges. However, we also conclude that when courts rule on exhaustion on the basis of evidence beyond the pleadings, the nonmoving party should be granted the protections of Rule 56. Consequently, we find that the district court did not err in converting Appellees' motion into a motion for summary judgment under Rule 12(d).

### A.

There is a right to a jury trial under the Seventh Amendment for actions brought under section 1983 seeking legal relief. *See City of Monterey v. Del*

*Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999).  This right, however, does not guarantee jury resolution of all factual disputes that arise in the course of litigation.  Judges have the power to resolve certain threshold issues without the participation of a jury before the adjudication of a case on its merits.  For example, when subject matter jurisdiction over a case turns on disputed facts, judges have the power to resolve these disputes in assuring themselves of their courts' jurisdiction.  *See, e.g., Wetmore v. Rymer*, 169 U.S. 115, 120-21 (1898); *Chatham Condo. Ass'ns v. Century Vill., Inc.*, 597 F.2d 1002, 1012 (5th Cir. 1979).  That said, a prisoner's failure to exhaust administrative remedies does not deprive courts of subject matter jurisdiction in suits covered by the PLRA. *See Woodford*, 548 U.S. at 101.  But the factfinding power of judges is not limited to addressing subject matter jurisdiction.  It also extends to deciding factual questions concerning certain affirmative defenses like personal jurisdiction and venue, which may be waived by a defendant.  *See, e.g.*, *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241-42 (5th Cir. 2008) (personal jurisdiction); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139-40 (9th Cir. 2004) (venue).

Exhaustion resembles personal jurisdiction and venue in that it is an affirmative defense that allows defendants to assert that plaintiffs have not invoked the proper forum for resolving a dispute.  *Pavey*, 544 F.3d at 741.  The Supreme Court has described exhaustion in similar terms, as "rule of judicial administration" controlling access to the courts, *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 & n.9 (1938), akin to doctrines like "abstention, finality, and ripeness . . . that govern the timing of federal-court decisionmaking."  *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).  Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, we conclude

No. 08-30419

that judges may resolve factual disputes concerning exhaustion without the participation of a jury.[2]

## B.

Having determined that disputed facts about exhaustion may be decided by judges, we now address whether the district court's conversion of Appellees' motion to dismiss into a motion for summary judgment was appropriate. The Ninth and Eleventh Circuits have both concluded that questions concerning exhaustion should be resolved on an unenumerated 12(b) motion to dismiss, and not via summary judgment. *Bryant*, 530 F.3d at 1374-75; *Wyatt*, 315 F.3d at 1119-20. In this circuit, however, we have frequently approved of using summary judgment to address exhaustion and other affirmative defenses not enumerated in Rule 12(b). *See, e.g.*, *Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1019 (5th Cir. 2009) (per curiam) (affirming summary judgment dismissal for failure to exhaust administrative remedies); *Mitchell v. Cont'l Airlines, Inc.*, 481 F.3d 225, 227, 232 (5th Cir. 2007) (approving dismissal of suit without prejudice on summary judgment for failure to exhaust); *Hager v. NationsBank N.A.*, 167 F.3d 245, 247-48 & n.1 (5th Cir. 1999) (approving of district court's granting plaintiff "procedural safeguards of Rule 56" after defendant moved to dismiss for failure to exhaust but relied on affidavits to support factual allegations); *Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F.3d 773, 775-76 & n.3 (5th Cir. 1997) (approving of district court addressing affirmative defense of liberative prescription via summary judgment); *Carpenters Local Union No. 1846*, 690 F.2d at 499-500, 527-29

---

[2] We do not determine today who should serve as factfinder when facts concerning exhaustion also go to the merits of a prisoner's claim. *See Pavey*, 544 F.3d at 741-42. In this case, the facts regarding the availability of remedies at Allen do not overlap with the facts going to the merits of Dillon's claims alleging abuse at Jena.

14

No. 08-30419

(genuine issue of material fact prevents dismissal on summary judgment for failure to exhaust); *Ecology Ctr. of La., Inc. v. Coleman*, 515 F.2d 860, 865-67 (5th Cir. 1975) (same). We see no need to diverge from our common practice, and consequently conclude that the district court did not err in addressing Appellees' exhaustion affirmative defense on summary judgment.[3]

### C.

As a final matter, we now provide a brief summary of how district courts should approach exhaustion questions under the PLRA. When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed to the merits. If the plaintiff survives summary judgment on exhaustion,[4] the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary. Then, if the judge determines that the plaintiff has

---

[3]    In a number of cases, we have held that exhaustion under the PLRA is considered "on pleadings without proof," and that as "long as the plaintiff has alleged exhaustion with sufficient specificity, lack of admissible evidence in the record does not form the basis for dismissal." *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (per curiam), *overruled by implication by Jones*, 549 U.S. at 216; *see also Days*, 322 F.3d at 866. These cases should not be read to suggest that courts may never look beyond the pleadings in resolving exhaustion questions, as the district court did in this case when it converted Appellees' motion to dismiss into a motion for summary judgment. *Underwood* and *Days* were decided before it became clear that exhaustion under the PLRA is not a pleading requirement that plaintiffs must satisfy at the outset of litigation. *See Jones*, 549 U.S. at 211-12; *Johnson v. Johnson*, 385 F.3d 503, 516 n.7 (5th Cir. 2004). Consequently, they addressed the proper standards for dismissing a prisoner's case sua sponte for failure to exhaust, a practice that is no longer appropriate unless failure to exhaust is apparent on the face of a plaintiff's complaint. *See Carbe v. Lappin*, 492 F.3d 325, 327-28 (5th Cir. 2007).

[4]    In many cases, the judge will be able to rule on exhaustion without allowing any discovery. However, in some cases, unique circumstances may arise that necessitate allowing some discovery prior to ruling, such as where the availability of administrative remedies is contested.

No. 08-30419

exhausted administrative remedies or that his or her failure to exhaust should be excused, the case may proceed to the merits.  On appeal, when the judge below has served as factfinder, we will review rulings on exhaustion de novo, *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999), but will accept the judge's factual conclusions unless they are clearly erroneous. *Carty*, 583 F.3d at 252-53.

## V.

For the foregoing reasons, we VACATE the district court's grant of summary judgment for Appellees and REMAND this case for discovery and further development of the record.

No. 08-30419

DENNIS, Circuit Judge, concurring in part and concurring in the judgment.

I CONCUR in the judgment in this case and CONCUR in the opinion except for Parts IIIC & IIID. In my view since the factual record in this case is insufficiently developed this court cannot yet know whether the doctrines of estoppel or "special circumstances" have any applicability. I therefore believe reaching these questions is premature at this stage in the proceedings.