# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 1, 2013

Nos. 12-40246 & 12-40248
Summary Calendar

Lyle W. Cayce
Clerk

ASAMARBUNKERS CONSULTADORIA E PARTICIPACOES
UNIPESSOAL LDA

Plaintiff–Appellant

v.

UNITED STATES OF AMERICA

Intervenor Plaintiff–Appellee

v.

New River M/V, etc., Et Al.,

Defendants

---

Consolidated with

ENJET, L.L.C.,

UNITED STATES OF AMERICA,

Intervenor Plaintiff–Appellee

v.

ASAMARBUNKERS CONSULTADORIA E PARTICIPACOES
UNIPESSOAL LDA; BUNKERS INTERNATIONAL CORPORATION,

Intervenor Plaintiffs-Appellants

v.

Nos. 12-40246 & 12-40248

M/V MONSEIGNEUR, Official Number 1046706, her masts, boilers, engines, tackle, apparel, etc; in rem, Et Al.,

Defendants

Appeals from the United States District Court
for the Eastern District of Texas
USDC Nos. 1:10-CV-223-RC & 1:10-CV-228

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

This consolidated case centers on the arrest of two ships and their subsequent sale to satisfy outstanding debts. The United States successfully intervened in the *in rem* proceedings on the basis of preferred mortgage liens on the two vessels. Asmarbunkers Consultadoria E Paricipacoes Unipessoal LDA and Bunkers International Corporation ("Appellants") challenged the United States' superior claim to the proceeds of the vessels' sale based on a fuel lien they possessed. The district court granted summary judgment for the United States, and this appeal followed. For the reasons that follow, we affirm.

**I**

The SS NEW RIVER and the SS THE MONSEIGNEUR ("the ships" or "the vessels") are two ships that were reconstructed by American Heavy Lift Corporation ("AHL") in 1995. The reconstruction was financed by issuing bonds. The bonds were in turn guarantied by the Maritime Administration ("MARAD"), which operates within the U.S. Department of Transportation, pursuant to its statutory authority. Those same statutes provide that MARAD's mortgage on

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

vessels it finances receives priority over most other creditor claims in the event the vessel owner defaults.

From 1995 to 2009, AHL had no problem paying the principal and interest due on both ships. However, during the credit crisis of 2009, AHL began to experience financial difficulty. AHL sought MARAD's assistance with making a principal payment due in December 2009 while assuring MARAD that it would make the relevant interest payment and that it was only experiencing temporary difficulty. Before MARAD had responded to AHL's request, however, AHL revised its request and asked MARAD to pay both the principal and interest due for December 2009.

As knowledge of AHL's hardships spread throughout the shipping industry, companies that AHL dealt with began to withdraw or modify AHL's credit. One of the most significant changes AHL experienced involved fuel suppliers demanding payment up front, instead of allowing AHL to pay for fuel at the conclusion of a shipping voyage, when AHL would receive payment for its services. These changes challenged AHL's ability to stay in business. In order to continue operating, AHL sought alternative sources of fuel and eventually contacted Appellants. AHL's situation presented a new, if risky, business proposition for Appellants, however, since AHL had exhausted its credit with other suppliers and needed fuel supplied on favorable terms. Appellants made some inquiries to other fuel suppliers to determine whether AHL was a reliable company. Appellants did not, however, seek a credit report or other financial documentation; nor did Appellants check public records regarding outstanding mortgages on AHL's vessels. Appellants, having satisfied themselves of AHL's creditworthiness, began supplying fuel.

MARAD ultimately declined to pay AHL's principal and interest payments for December 2009. As a result, AHL defaulted. Under the relevant agreements, AHL's default gave MARAD the option to immediately foreclose on

Nos. 12-40246 & 12-40248

the mortgage. The agreements also gave AHL a grace period within which it could cure its default. MARAD elected against immediate foreclosure and bond holders decided to wait in hopes that AHL would remit the amount owed. In January 2010, it was determined that AHL could not cure its default. MARAD paid the loan guaranty accordingly. MARAD then exercised its right to accelerate AHL's debt and demand immediate payment. AHL could not remit the amount due, so MARAD began negotiating the surrender of the two vessels at issue here. MARAD eventually took control of the ships in April 2010.

After their arrest, the ships were sued by AHL's creditors *in rem*. The United States moved to intervene, citing its preferred mortgage lien for some $91 million. Appellants contested the United States' position, alleging that their lien for fuel took priority and that the United States' mortgage should be equitably subordinated. The district court allowed the United States to intervene and granted summary judgment. The vessels were sold at auction for $5.7 million. As this satisfied only a fraction of the United States' mortgage, AHL's other creditors did not receive any of these funds.[1] Appellants then filed the instant appeal.

## II

We review the district court's grant of summary judgment de novo, applying the same standards as the district court. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[1] There is one exception. The crew of each ship successfully pressed claims for unpaid contributions to the crews' IRAs and vacation plans. Under the applicable law, these were the only claims with statutory superiority to the United States' claim.

Nos. 12-40246 & 12-40248

However, a party asserting "that a fact cannot be or is genuinely disputed" must support such an assertion by citing specific parts of the record. Fed. R. Civ. P. 56(c)(1).

## III

Appellants claim on appeal that their lien for fuel supplied to AHL should take precedence over the United States' preferred mortgage lien based on the principles of laches or equitable subordination. Appellants so claim because MARAD purportedly knew about AHL's financial difficulties before they began supplying AHL with fuel. It is Appellants' contention that they suffered prejudice as a result of MARAD's conduct. Appellants also seek reversal based on the district court's failure to enforce a local rule when it considered the United States' motion for summary judgment.

## A

In order to justify equitable subordination of a valid claim, Appellants must show that (1) MARAD engaged in inequitable conduct; (2) the misconduct injured a creditor or conferred an unfair advantage on MARAD; and (3) equitable subordination is not inconsistent with statutory provisions. *See Custom Fuel Servs., Inc. v. Lombas Indus., Inc.*, 805 F.2d 561, 566 (5th Cir. 1986). Showing that MARAD is in a position of control over the debtor is generally "[t]he prerequisite to a finding of inequitable conduct." *Id.* Inequitable conduct exists in three categories of cases: (1) "those in which a fiduciary of the debtor misuses his position to the disadvantage of other creditors"; (2) "those in which a third party, in effect, controls the debtor to the disadvantage of others"; and (3) "those in which a third-party defrauds other creditors." *CTS Truss, Inc. v. Fed. Deposit. Ins. Co.*, 868 F.2d 146, 148–49 (5th Cir. 1989).

Equitable subordination is not appropriate here because, as the district court found, Appellants fail the first prong of the test. Appellants have neither alleged nor demonstrated that MARAD was in control of AHL; and Appellants

5

do not claim that MARAD defrauded other creditors or that MARAD is a fiduciary of AHL. *See id.*; *Custom Fuel Servs.*, 805 F.3d at 566. As a result, it cannot be shown that MARAD engaged in inequitable conduct for purposes of equitable subordination. Summary judgment was thus appropriate.

In response, Appellants claim that a showing of control over the debtor is irrelevant, though they do not present persuasive precedent on point. As our cases makes clear, demonstrating inequitable conduct on the part of a claimant requires showing the claimant's control over the debtor. *Id.* The point is aptly illustrated by *Custom Fuel Services*, 805 F.2d 561 (5th Cir. 1986). In that case, this Court encountered the sort of sham transaction against which equitable subordination is meant to protect creditors. A ship owner attempted to insulate its vessel from maritime liens by transferring title to a wholly owned subsidiary and taking a preferred ship mortgage equal to the ship's value. *Id.* at 563. When the parent company attempted to assert the priority of its mortgage lien against other creditors, this Court employed equitable subordination to avoid the ship owner's sham transaction. *Id.* at 568–69. In *Custom Fuel Services*, the Court required a showing of control and found such a showing given that the debtor company was a wholly owned subsidiary of the creditor asserting a preferred mortgage lien. *Id.* at 566. Such is not the case here. Appellants have made no showing that MARAD was in a position of control over AHL. Therefore, we affirm on this issue.

**B**

Laches—the claim that another party's inexcusable delay resulted in prejudice—has three elements: (1) delay in asserting a right; (2) the delay was inexcusable; and (3) undue prejudice resulted from the delay. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998). Here, Appellants claim that laches applies because MARAD did not foreclose on AHL's vessels at the first sign of financial distress. This claim fails for two reasons. First, MARAD

had no obligation to foreclose on AHL's ships when AHL first encountered financial difficulty. The relevant agreement gave MARAD the option, but not the obligation, to foreclose. Second, when MARAD opted to delay foreclosure, it did so for justifiable reasons: given the state of the credit market when AHL first exhibited signs of distress, it was in creditors' interest to give AHL an opportunity to cure default. The ships' value as collateral was minimal, and the interest rate on AHL's bonds was far preferable to the alternatives available towards the end of 2009. It was also in the interest of the industry overall given the number of jobs dependent on AHL's continued operation. Any delay was thus excusable. To the extent Appellants regret their decision to supply the ships with fuel after AHL's default, it was not MARAD's obligation to ensure AHL was creditworthy. Therefore, we affirm on this issue as well.

## C

Appellants also cursorily claim that the district court's summary judgment order should be reversed because the district court ignored a local rule requiring that motions for summary judgment include a statement of issues to be decided by the court and a statement of undisputed material facts. We review a district court's application of local rules for an abuse of discretion. *Victor F. v. Pasadena Indep. Sch. Dist.*, 793 F.2d 633, 635 (5th Cir. 1986).

Here, Appellants have not demonstrated an abuse of discretion. Rather, Appellants rely merely on the fact that the district court considered the United States' motion, despite the government's failure to submit the required statements. Nevertheless, the relevant issues were fully briefed and the district court issued well-reasoned opinions clearly explaining the facts of this case, the relevant standards, and the analysis that led to the court's decision to grant summary judgment. As such, the district court did not abuse its discretion. To the extent this local rule is intended to aid the court's handling of motions, the court clearly did not believe the government's oversight impaired that ability.

Nos. 12-40246 & 12-40248

If the rule is intended to assist opposing parties in responding, Appellants have not claimed that their ability to respond on the merits was hampered. Therefore, we affirm.

**IV**

For the foregoing reasons, the summary judgment is AFFIRMED.