# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-60163

United States Court of Appeals
Fifth Circuit

**FILED**

February 7, 2018

Lyle W. Cayce
Clerk

BILLY N. WHEATER,

Plaintiff−Appellant,

versus

FRANK SHAW, Warden;
MAJOR SMITH, East Mississippi Correctional Facility;
INVESTIGATOR RICE, East Mississippi Correctional Facility;
INVESTIGATOR ALEXANDER, East Mississippi Correctional Facility;
OFFICER BATTLES, East Mississippi Correctional Facility;
CAPTAIN NADOW, East Mississippi Correctional Facility;
CAPTAIN BRYANT, East Mississippi Correctional Facility;
CAPTAIN TREHUNE, East Mississippi Correctional Facility;
CAPTAIN DYKES, East Mississippi Correctional Facility;
UNKNOWN CLARKE, Case Manager;
TIESHA EVANS, East Mississippi Correctional Facility;
UNKNOWN JENKINS, Nurse,

Defendants−Appellees.

Appeal from the United States District Court
for the Southern District of Mississippi
No. 3:13-CV-813

No. 16-60163

Before REAVLEY, SMITH, and OWEN, Circuit Judges.

JERRY E. SMITH, Circuit Judge:*

Billy Wheater appeals a summary judgment that is based on his failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a). Because there is a genuine dispute as to whether Wheater withdrew his grievance before exhausting, we affirm in part and vacate and remand in part.

I.

Wheater, a Mississippi prisoner, filed a 42 U.S.C. § 1983 civil rights action against Frank Shaw, Derrick Smith, Ray Rice, Augustine Battle, Mathew Naidow, and Christopher Dykes—employees of the Management & Training Corporation ("MTC"), a private prison management company operating the East Mississippi Correctional Facility ("EMCF"). Wheater alleged that those defendants failed to protect him from inmates who attacked and stabbed him in December 2012. He also alleged a failure-to-protect claim against Tyeasa Evans, an employee of the Mississippi Department of Corrections ("MDOC") who monitors MTC's operations at EMCF.[1] Wheater additionally sued a nurse, Santa Jenkins, asserting that she refused to give him insulin. The magistrate judge ("MJ") conducted an "omnibus" hearing and said the parties should address whether Wheater had exhausted his administrative remedies. Wheater conceded that he did not exhaust with respect to Jenkins.[2]

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Shaw, Smith, Rice, Battle, Naidow, Dykes, and Evans are collectively referred to as the MTC Defendants.

[2] At the omnibus hearing, the MJ asked Wheater whether he had "completed the ARP process on th[is] issue." Wheater replied, "I only took – I took to the first step, and I got a response that said—from Nurse Little that said he felt that [Jenkins's] action was appropriate."

No. 16-60163

The defendants moved for summary judgment, asking for dismissal because Wheater had failed to exhaust his remedies through the MDOC's two-step Administrative Remedy Program ("ARP"). The MTC Defendants asserted specifically that Wheater withdrew his ARP grievances concerning their failure to protect him.

The MJ recommended dismissal for failure to exhaust. She noted summary judgment evidence showing that, in January 2013, Wheater filed three stabbing-related grievances that were consolidated. She concluded that, after Wheater was transferred, he withdrew those grievances, and also that Wheater withdrew a later grievance against Jenkins. Finally, she observed that, after his transfer, Wheater filed another grievance about the stabbing that was rejected as untimely.

Wheater filed objections asserting that he had not failed to exhaust his grievance about being stabbed but had withdrawn only his grievances about the denial of insulin and other matters. The district court overruled the objections and dismissed without prejudice.

II.

On appeal, Wheater contends that prison officials violated the Eighth Amendment by being deliberately indifferent to his safety. Concerning exhaustion, he again asserts he never withdrew his grievance about being stabbed. We address only the latter, preliminary issue, because the district court did not reach the merits of the Eighth Amendment claims.[3]

A dismissal for failure to exhaust administrative remedies is reviewed

---

[3] "'It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.'" *Humphries v. Elliott Co.*, 760 F.3d 414, 418 (5th Cir. 2014) (quoting *Singleton v. Wulff*, 428 U.S. 106 (1976)).

de novo. *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999). "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This court takes a strict approach to exhaustion. *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010). Substantial compliance is insufficient; prisoners must properly exhaust all available remedies by, among other things, complying with deadlines and procedural rules.[4] Exhaustion must be completed before suit; it may not be excused if it occurs while the suit is pending. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

After the district court issued its order, the Supreme Court held, "A prisoner need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016). An administrative remedy can be unavailable where officials are "unable or consistently unwilling to provide any relief." *Id.* at 1859. Also, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use" by the ordinary prisoner or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60. "When a prisoner has no means of verifying prison officials' claims about the administrative grievance process, incorrect statements by officials may indeed make remedies unavailable." *Dillon*, 596 F.3d at 268–69.

The MDOC ARP is a two-step process set forth in the Inmate Handbook.[5] An inmate must file a grievance within 30 days of the complained-of incident.

---

[4] *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006); *see Dillon*, 596 F.3d at 267–68.

[5] *Wilson v. Epps*, 776 F.3d 296, 300 n.2 (5th Cir. 2015); *see* MDOC Inmate Handbook, ch. VIII, http://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf [hereinafter MDOC Inmate Handbook]; *see also Howard v. Epps*, No. 5:12CV61 KS-MTP, 2013 WL 2367880, at \*2 (S.D. Miss. May 29, 2013).

No. 16-60163

*See* MDOC Inmate Handbook.  The grievance is reviewed by the prison's legal-claims adjudicator and, if there is an adverse response at the first step, the inmate may appeal to step two.  *Id.*  If the inmate disagrees with the step-two response, he may sue.  *Id.*

1.

Jenkins, who allegedly refused to give Wheater insulin, contends that Wheater has failed to brief, and has thus waived, any claim that he exhausted administrative remedies against her.  Jenkins is correct.  *See Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993).  Additionally, the unrebutted summary judgment evidence shows that Wheater explicitly withdrew his ARP grievance against Jenkins before exhausting.  The judgment of dismissal for Jenkins is affirmed.

2.

Wheater claims that, because he never withdrew his grievance about the MTC Defendants' failure to protect him from being stabbed, he should be deemed to have exhausted his administrative remedies concerning that claim.  The MTC Defendants rely on evidence purporting to show that Wheater withdrew his ARP grievance against them.  The evidence included affidavits by Becky Naidow, ARP coordinator for the EMCF, and Mary Dempsey, MTC's ARP coordinator.

According to the defendants, Wheater submitted a grievance on January 21, 2013, in which he complained that he was stabbed on December 21, 2012, because the defendants failed to protect him.  He asked to be transferred to the Marshall County jail.  On January 25, 2013, he filed another grievance asserting that other defendants failed to protect him from the stabbing, asking again that he be transferred, and asking for criminal charges against his

5

attackers. On January 29, 2013, he filed a third grievance about the stabbing, again asserting that it was the result of defendants' denial of his requests for protection. He asked for a transfer to Marshall County or the state prison in Parchman and for the prosecution of his attackers. According to Dempsey's affidavit, the three grievances were accepted and consolidated into one, which was identified as EMCF-13-990.

Dempsey's affidavit states in a conclusional manner that after Wheater was transferred to another prison, SMCI, he withdrew the consolidated grievance before receiving an answer at step one. The affidavit provides no indication of how or when Wheater made that request. Becky Naidow's affidavit is even more succinct and states merely that Wheater filed a grievance and then "withdrew his complaint regarding being transferred."

In contradiction, Wheater points to a note in which he withdrew only other grievances, while explicitly requesting that the office focus on his ARP "concerning *being stabbed*." He asserts that, after he was transferred to SMCI, he inquired about the stabbing grievances but was told by EMCF that there was no record of any ARP about the stabbing and that he should refile. He complied with such instruction, but, by that time, such grievance was untimely and was not accepted into the ARP program. Wheater contends that EMCF thus tried "to hinder [him] from achieving relief." The MTC Defendants respond that, even if the grievances "were somehow mishandled," Wheater should have proceeded to step two when he did not receive a reply at step one.

The district court did not address these latter contentions when it adopted the MJ's recommendation. That recommendation urged summary judgment based only on the finding that Wheater had withdrawn the ARP concerning the stabbing. Thus, we consider only the district court's ruling that there was no genuine dispute of material fact that Wheater withdrew the ARP.

6

No. 16-60163

There is a "genuine" issue of fact as to whether Wheater withdrew his stabbing grievances. *See Cuadra*, 626 F.3d at 812. The MTC Defendants point only to conclusional statements, in affidavits, that say Wheater withdrew his ARP in this matter, whereas Wheater supplies all documents concerning the various ARP filings and points to the one that explicitly withdraws other ARPs while requesting continuing review of the stabbing ARP. A reasonable fact-finder could find the document explicitly requesting continued review of the stabbing ARP, in combination with a lack of any documentation showing withdrawal of the stabbing ARP—especially in a process perfectly documented in every other respect—outweighs the conclusional statements of the affiants.

This contested issue is also "material" in that its resolution could affect the outcome of the action under applicable law. *See Cuadra*, 626 F.3d at 812. For example, in *Wilson*, 776 F.3d at 301, this court noted that "under some circumstances, a prison's failure to respond to a prisoner's grievances can result in the prisoner's administrative remedies being deemed exhausted," though no such circumstances were found in that case. A delay in responding to a grievance does not permit a prisoner to run to court without finishing the administrative process.[6]

Nonetheless, if the ARP administrators mistakenly regarded Wheater's failure-to-protect claim as withdrawn, and if they told Wheater that he had no grievance on file and that he needed to refile, then his situation would be distinguishable from a circumstance of a mere delay in responding and *may* be one in which the ARP process was unavailable per *Ross*. A "strict approach does not absolutely foreclose the possibility that prison officials' statements

---

[6] MDOC Inmate Handbook (explaining that the exhaustion "requirement does not fall by the wayside in the event that the prison fails to respond to the prisoner's grievance at some preliminary step in the grievance process. Instead, the prison's failure to timely respond simply entitles the prisoner to move on to the next step in the process.").

concerning administrative remedies can render such remedies unavailable." *Dillon*, 596 F.3d at 268. In light of the statement from the EMCF, Wheater possibly should not have been required or expected to proceed to step two on what he was told was a nonexistent grievance. His administrative remedy was thus potentially rendered unavailable by the EMCF's statements.

Accordingly, the order granting summary judgment to Jenkins is AFFIRMED, the order granting summary judgment to the MTC Defendants is VACATED, and this matter is REMANDED to the district court for further proceedings as needed. We place no limitation on the matters that the district court may address, as needed, on remand, and we indicate no view on the ultimate merits.