# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
January 31, 2022

Lyle W. Cayce
Clerk

No. 19-50010

Arthur Luther McKinney,

*Plaintiff—Appellant*,

*versus*

Gary Painter, *Sheriff, Midland County*; Rebecca Graham, *Captain*; Benito Alaniz, *Officer*; FNU Henery, *Officer*; FNU Ramirez, *Officer*; FNU Domiss, *Bailiff*; FNU Mchaney, *Lieutenant*; FNU Kimo, *Sergeant*; FNU Mayhart, *Sergeant*; John Doe, 1–10,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:17-CV-67

Before Owen, *Chief Judge*, and Clement and Engelhardt, *Circuit Judges*.

Per Curiam:*

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-50010

Arthur Luther McKinney files this *pro se* appeal of the district court's dismissal of his civil rights claims under 42 U.S.C. § 1983 against various officials and officers of Midland County (the Defendants). McKinney also appeals the district court's denial of his motion for reconsideration. The Defendants failed to submit any briefing.

For the reasons that follow, we AFFIRM.

## I.

## A.

The facts relevant to this appeal cluster around two incidents of alleged excessive force at the Midland County Central Detention Center (the "Detention Center"): one incident with Defendant Officer Benito Alaniz and an unrelated incident with the John Doe Defendants. Because the grievance process at the Detention Center plays a central role in the resolution of this appeal, we briefly describe the adopted two-step inmate grievance procedure before discussing the facts.

In Step One, the prisoner shall file the grievance "in the form of a written statement promptly following the incident." Upon receipt, the grievance officer reviews and categorizes the grievance as (1) a proscribed act by a staff member, (2) a civil rights violation, (3) an unjust denial of inmate privileges, or (4) a criminal act. Then, the grievance officer or a designee will investigate fully and "[a]ppropriate action to redress the grievance will be taken." To complete Step One, the grievance officer must submit a written response, including "findings and actions employed by the investigating officer" within 60 days, "with [an] interim response not to exceed fifteen (15) days." And "[a] copy of all findings and responses to the inmate grievance will be placed in the grievance folder." The ball is then back in the prisoner's court for Step Two, in which he "may appeal his case to the Sheriff using the same form as if he were preparing an original grievance and

also stating he was not satisfied with the investigation and outcome of the original grievance."

The first incident of alleged excessive force occurred on June 13, 2015, while McKinney was incarcerated at the Detention Center. To place the event in context, McKinney had already filed three grievances expressing fear for his safety based on an April 29, 2015 incident where Alaniz allegedly threatened him, grabbed him by the shirt, and pulled him around. McKinney claims that Alaniz followed through on a "premeditated plan to assault" him on June 13, when Alaniz allegedly threw him against a wall, placed his hand around his neck and choked him, threw him over a table, grabbed him by his hair, took a set of keys in one hand, and repeatedly punched him in the head and the ear with the keys. The incident allegedly resulted in significant bleeding, knots on his head, and two holes in his ear, which required nine stitches from the hospital. McKinney submitted grievances about the incident on June 17 and June 20.

A fellow prisoner supported this account, declaring that McKinney had to be "carried . . . away" while others "mopped up the blood." Officers Villanueva, Lucio, Groessel, Salcido, and Strambler, who reported to the incident, also took note of the blood. For example, Villanueva reported "blood all over the floor and on the table," including "a trail . . . to where McKinney was on the floor." Lucio reported that McKinney "was curled up into a fetal position in a pool of blood." Groessel reported that "McKinney was laying face down in a fetal position . . . bleeding profusely." He also confirmed that McKinney suffered visible injuries: "three lacerations to the right side of his head: one on his temple, the other two on his ear."

On July 2, McKinney received responses to both grievances. The response to the June 17 grievance did not acknowledge the alleged assault.

The response to the June 20 grievance stated simply that the grievance was being "forwarded to [the Criminal Investigation Division]."

McKinney followed up on his grievances ten times to ask for the findings and conclusions of the investigation. The responses he received are confusing. He was first told his grievance was "[a]lready answered." The next two responses did not acknowledge the alleged assault. The following three responses, all dated the same day, stated that "[t]hese allegations will be investigated." The next response stated: "Grievance forwarded to CID via email." Then, nine days later: "You have already been provided a[n] answer." The final two responses stated: "N/C." The record does not reflect that McKinney received any other responses.

The second incident of excessive force occurred, according to McKinney, while he was a pretrial detainee "being booked into the Midland Co[unty] Jail." He alleged that, "an unknown jailer started choking him for no just cause and several unknown jailers got involved and used a weapon on [him] for no just cause."

**B.**

In April 2017, McKinney sued various officials of Midland County in federal district court, alleging claims under 42 U.S.C. § 1983 of excessive force; threats by employees; failure to protect; constant fear for safety; unjust punishment; failure to supervise, discipline, and train; retaliation; denial of medical treatment; equal protection; municipal liability; and state-created danger theory. The district court adopted the Report and Recommendation of the magistrate judge and dismissed all claims save the excessive force claim against Alaniz.

McKinney then filed an Amended Complaint, reasserting the claims in his original Complaint and adding facts to support the claim of excessive force against the John Doe Defendants. But his claim still lacked the names

No. 19-50010

of the alleged assailants, the exact date, and a statement on the severity of his injury.

Alaniz moved for summary judgment on the excessive force claim against him, which the district court granted on the grounds that McKinney failed to exhaust the administrative grievance process. In the same order, the court dismissed McKinney's Amended Complaint for failure to state a claim and frivolousness. McKinney moved for reconsideration under Federal Rule of Civil Procedure 59(e). The district court denied the motion. McKinney timely appealed.[1]

On appeal, he contends that the district court erred (1) by granting summary judgment and denying reconsideration under Rule 59(e) on the excessive force claim against Alaniz; and (2) by dismissing his Amended Complaint for failure to state a claim and as frivolous.[2]

## II.

McKinney challenges the district court's grant of summary judgment in favor of Alaniz on the excessive force claim and the denial of reconsideration of that order under Rule 59(e). The district court

---

[1] The district court denied McKinney's motion to proceed *In forma Pauperis* (IFP) on appeal. In November 2019, we barred McKinney from proceeding IFP in any civil action or appeal while he is incarcerated or detained unless he is under imminent danger of serious physical injury. However, McKinney filed the IFP motion in this case in February 2019, nine months prior to our sanction. We allowed McKinney to proceed IFP in the instant appeal.

[2] McKinney also challenges the dismissal of the remaining claims in his Complaint, and as reasserted in his Amended Complaint, for failure to state a claim. We did not certify him to proceed IFP on appeal of these issues. Even with the liberal construction granted to *pro se* litigants, McKinney provided no legal argument to support a basis for preserving those claims on appeal. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). He has thus failed to present them sufficiently and we do not address them. *See Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993).

determined that McKinney failed to exhaust the available administrative remedies because he received an appealable response and failed to appeal it.

## A.

We review the grant of summary judgment *de novo* and apply the same standard as the district court. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017) (per curiam). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R .CIV. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Austin*, 864 F.3d at 328 (citation omitted). At summary judgment, we "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (citation omitted). But "conclusional allegations and unsubstantiated assertions may not be relied on as evidence by the nonmoving party." *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011).

The denial of a motion for reconsideration under Rule 59(e) is reviewed for an abuse of discretion. *See In re Life Partners Holdings, Inc.*, 926 F.3d 103, 128 (5th Cir. 2019). To survive scrutiny, the district court's decision must only be "reasonable." *Midland W. Corp. v. FDIC*, 911 F.2d 1141, 1145 (5th Cir. 1990).

## B.

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). We take "a 'strict' approach" to exhaustion and require prisoners "not just [to] substantially comply with the prison's grievance procedures

but . . . [to] 'exhaust available remedies *properly*.'" *Wilson v. Epps*, 776 F.3d 296, 299–300 (5th Cir. 2015) (quoting *Dillon*, 596 F.3d at 268). Exhaustion requires "complet[ing] the administrative review process in accordance with the applicable procedural rules," *Woodford v. Ngo*, 548 U.S. 81, 88 (2006), which "are defined not by the PLRA, but by the prison grievance process itself," *Jones v. Bock*, 549 U.S. 199, 218 (2007). Because exhaustion is an affirmative defense, Alaniz carries the burden to demonstrate that McKinney failed to exhaust the available remedies. *See Dillon*, 596 F.3d at 266.

"Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam) (citation omitted). These exceptions "apply only in 'extraordinary circumstances,'" and the petitioner has the burden to establish that administrative review would be futile. *Id.* (citation omitted).

McKinney concedes that he did not file an administrative appeal of his grievance. Nonetheless, he contends that the district court granted summary judgment in error because the record supports a genuine dispute of material fact on whether he received an appealable response (Step One) and therefore had the opportunity to appeal the resolution of his initial grievance (Step Two). We disagree.

A prison's failure to respond to a prisoner's grievance can establish the exhaustion of administrative remedies where the prisoner nonetheless proceeded through all steps of the grievance process. As we have explained:

> Section 1997e's exhaustion requirement is satisfied only if the prisoner "pursue[s] the grievance remedy to conclusion." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). This requirement does not fall by the wayside in the event that the

prison fails to respond to the prisoner's grievance at some preliminary step in the grievance process. Instead, the prison's failure to timely respond simply entitles the prisoner to move on to the next step in the process. Thus, it is only if the prison fails to respond at the *last* step of the grievance process that the prisoner becomes entitled to sue, because then there is no next step (save filing a lawsuit) to which the prisoner can advance.

*Wilson*, 776 F.3d at 301; *see also Taylor v. Burns*, 371 F. App'x 479, 481 (5th Cir. 2010) (per curiam) ("The expiration of the time for the prison to respond would result in exhaustion only if [the prisoner] had timely pursued his grievance at each step of the process.").

After McKinney filed the June 20 grievance against Alaniz, he received the July 2 Response stating that the grievance had been "forwarded to [the Criminal Investigation Division]." He then proceeded to follow up on his grievance numerous times. Even assuming the July 2 Response did not constitute an appealable response under the terms of the grievance procedure, the prison's failure to respond would only result in exhaustion if McKinney had still "pursue[d] the grievance remedy to conclusion" as required by the PLRA. *Wright*, 260 F.3d at 358. In other words, the prison's failure to respond within sixty days—as required by the grievance procedure—simply authorized McKinney to proceed to Step Two and "appeal his case to the Sheriff . . . and also stat[e] he was not satisfied with the investigation and outcome of the original grievance." That McKinney did not do so ends the matter.

McKinney failed to administratively appeal his grievance to the Sheriff as the Detention Center's grievance procedure required. Accordingly, there is no genuine issue of material fact as to whether he failed to exhaust his administrative remedies, and summary judgment was appropriate on his excessive force claim against Alaniz.

No. 19-50010

## III.

McKinney also challenges the district court's dismissal of the excessive force claim against the John Doe Defendants for failure to state a claim and for frivolousness. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). Our review is *de novo*. *See Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005) (per curiam) (reviewing *de novo* where district court referred to both §§ 1915(e)(2)(B) and 1915A). We accept the facts alleged in the Amended Complaint as true and construe them in the light most favorable to the plaintiff. *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) (per curiam).

Under § 1915A(b)(1), where a prisoner seeks relief from a governmental entity or employee, a district court must, as a threshold matter, dismiss any portion of the complaint that "is frivolous, malicious or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). Whether a complaint fails to state a claim under § 1915A(b)(1) or its sister statute, § 1915(e)(2)(B), follows the pleading standard under Federal Rule of Civil Procedure 12(b)(6). *See Black v. Warren*, 134 F.3d 732, 733–34 (5th Cir. 1998) (per curiam). A complaint is frivolous if it has no "arguable basis in fact or law." *Morris v. McAllester*, 702 F.3d 187, 189 (5th Cir. 2012). *See Iqbal*, 556 U.S. at 678 (holding that, under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The district court dismissed the excessive force claim against the John Doe Defendants "as utterly conclusory" and "completely fail[ing] to allege any facts (who, what, when)." We agree that the claim failed to meet the pleading standards.

Before a district court dismisses a *pro se* complaint, it must generally give notice of the perceived inadequacy of the complaint and an opportunity to correct any deficiencies. *See Brown v. Taylor*, 829 F.3d 365, 370 (5th Cir. 2016). We have previously encouraged district courts to allow *pro se* plaintiffs proceeding IFP discovery to identify a John Doe Defendant for service of process. *See, e.g.*, *Murphy v. Kellar*, 950 F.2d 290, 293 (5th Cir. 1992); *Cowart v. Dall. Cnty. Jail*, 439 F. App'x 332, 332–33 (5th Cir. 2011) (per curiam).

Even reading the Amended Complaint liberally, McKinney failed to provide sufficient factual details to proceed on his claim. He failed to provide a date the alleged assault occurred, any identifying description of the alleged assailant jailers, and, critically, that he suffered any injuries as a result.

The district court properly dismissed the claim for failing to assert sufficient factual allegations. *See Iqbal*, 556 U.S. at 678.

\* \* \*

We AFFIRM the September 28, 2018 Final Order of the district court granting summary judgment and dismissing the Amended Complaint.

And we AFFIRM the December 10, 2018 Order of the district court denying reconsideration under Federal Rule of Civil Procedure 59(e).