**REVISED July 2, 2019**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
July 1, 2019

Lyle W. Cayce
Clerk

No. 17-30455

DENNIS BARGHER,

       Plaintiff - Appellant

v.

CRAIG WHITE, Major; UNKNOWN DAVISON, Sergeant; UNKNOWN
WILKES, Master Sergeant,

       Defendants - Appellees

Appeal from the United States District Court
for the Middle District of Louisiana

Before STEWART, Chief Judge, and DENNIS and WILLETT, Circuit Judges.
JAMES L. DENNIS, Circuit Judge:

While a prisoner at the Elayn Hunt Correctional Center in Louisiana, Dennis Bargher Jr. brought suit under 42 U.S.C. § 1983 against prison official defendants alleging that they arranged for another inmate to attack him and stood by while the other inmate severely injured him. While Bargher's legal action was pending, he was released from prison. The district court granted summary judgment for the defendants, dismissing Bargher's claims with prejudice as barred by the prescription period or, in the alternative, for

Bargher's failure to exhaust administrative remedies as required under the Prison Litigation Reform Act (PLRA).

We find that fact issues remain as to whether the prescription period was suspended and, thus, as to whether Bargher's claims were timely. Because we additionally hold that Bargher failed to exhaust administrative remedies, the proper disposition was therefore dismissal without prejudice. We VACATE the district court's judgment and REMAND with instructions to dismiss Bargher's claims without prejudice to his ability to refile now that he is no longer bound by the PLRA's exhaustion requirements.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 4, 2016, while an inmate at the Elayn Hunt Correctional Center (E.H.C.C.) in Louisiana, Dennis Bargher Jr. filed a 42 U.S.C. § 1983 action against Major Craig White, Sergeant Davidson, and Master Sergeant Wilkes. Bargher alleged that these three prison employees violated his Eighth Amendment rights by encouraging another inmate to injure him, locking that inmate in a cell with him, and then standing by while that inmate "brutal[ly] attack[ed]" him.

Specifically, Bargher alleged the following facts, none of which Defendants dispute on appeal. Prior to the attack, Bargher provided the Warden with information about an extortion scheme within the prison that involved Officer White. White learned about this and confronted Bargher. White then repeatedly spoke with Johnathan Veal, an inmate who had previously assaulted another inmate, and encouraged Veal to injure Bargher. White falsely told Veal that Bargher had been the one to report Veal for the previous assault, and told Veal that Bargher was "a rat and had to die." Bargher learned that, based on White's lies, Veal planned to seek revenge on him.

On April 18, 2015, Bargher was taken from his cell and later escorted back by Sergeant Davidson. When Davidson was returning Bargher to his cell, Bargher noticed that another inmate was unexpectedly already inside. Bargher objected to going back into the cell, but Davidson commanded him to "Get the F in the cell!" Once locked inside, Bargher realized the other inmate was Veal, who immediately began to attack him. Veal beat Bargher while Davidson watched and laughed, and Veal continued to do so until Davidson eventually stopped Veal and removed Bargher from the cell. As a result of the attack, Bargher suffered a broken jaw, broken teeth, and facial nerve damage. He states that he has permanent disfigurement and pain as well as significant emotional distress and anxiety.

As noted, Defendants neither admit not deny this account in the district court or on appeal, but instead dispute what remedies Bargher sought in response. Under E.H.C.C.'s Administrative Remedy Procedure, inmates must first submit internal, written grievances—referred to as "ARPs"—by placing them in a box, from which they are then collected by prison staff, assigned a case number, and entered into E.H.C.C.'s computerized records. The record provides no indication that inmates receive notice when their ARPs are received or told what case number are assigned to which of their ARPs. Instead, they only receive notice when an ARP, as identified by the number assigned to it, is accepted or rejected. This has the potential to create confusion around which ARPs have received responses and which have not.

Bargher asserts in a sworn affidavit and in his brief on appeal that he submitted several ARPs through this internal grievance procedure related to the April attack. He has additionally provided other documents, written before this lawsuit, in which he declared that he submitted the same ARPs. He has consistently contended that he first submitted two ARPs before the attack, in which he declared that Veal was his "known enemy" and needed to be kept

No. 17-30455

away from him. He has repeatedly also asserted that, on June 12, 2015, he submitted a five-page ARP (the June ARP) detailing Veal's April attack and the Defendants' culpability. The record includes a copy of the June ARP that Bargher sent to his attorney, Donna Grodner as well as an accompanying letter in which he informed her that neither that ARP nor the two he submitted about Veal before the attack had received any response. This letter and copy of the June ARP are post-marked June 25, 2015 and stamped as received by Grodner on June 30, 2015.

On October 7, 2015, Grodner sent a letter to the Warden inquiring about the status of Bargher's three ARPs for which he never received a response. On October 22, the Warden responded that Bargher had no ARPs pending.

On October 6, 2015, Bargher submitted an ARP (ARP 744) requesting a response to the other ARPs that he asserted therein were still pending. This ARP was given case number EHCC-2015-744, and rejected two days later on October 8, 2015, for "addressing more than one complaint." The rejection notice identifies the ARP by its number and contains no other reference to its content.

On November 3, 2015, Bargher submitted another ARP (ARP 819) describing the April assault and requesting remedies. In this submission, Bargher references other ARPs that he says he had submitted that "must have been lost, or better yet never received." This ARP was assigned number EHCC-2015-819 and rejected November 4, again with a form that provides only the case number to identify which ARP is being rejected.

Bargher brought suit on May 4, 2016. Defendants subsequently filed a motion for summary judgment, arguing that Bargher's claims were barred by the expiration of the applicable one-year prescription period. Defendants noted that the timeframe for Bargher's § 1983 claim commenced on April 18, 2015, the date he alleges he was attacked. While acknowledging that the

4

prescription period is suspended while the inmate is awaiting a response to a related ARP, Defendants attested that the only ARP Bargher submitted addressing the April attack was ARP 819, which tolled the period for only two days from when it was submitted on November 3, 2015, until November 4, 2015, when it was rejected.

In his opposition to summary judgment, Bargher asserted that the June ARP suspended the prescription period. In his brief in opposition, Bargher stated that: "[the June ARP] was either never answered or it is [ARP 819] that, on November 4, 2015 . . . was rejected." The district court denied Defendants' first motion for summary judgment, noting that, if Bargher had in fact submitted the June ARP as he alleged, then his claim was not prescribed.

Defendants then filed new motions for summary judgment with additional evidence, including the prison's records of all ARPs that Bargher had submitted since 2013. There is no record therein of an ARP submitted in June 2015 nor either of the two ARPs that Bargher asserts he filed before the attack requesting that Veal be kept away from him. Instead, the records show that the first ARP Bargher filed in 2015 was ARP 744 in October, followed by ARP 819 in November. The copies of ARP 744 and 819 that Defendants provided demonstrate that ARP 819 is the only one in the records that discusses the April attack. It is also clear from these documents that ARP 819 is not itself the June ARP: the district court noted that "unlike the five page ARP Plaintiff claims he filed on June 12, 2015, ARP No. EHCC-2015-0819 was only four pages and dated October 30th-31st, 2015." Defendants also submitted an affidavit from the ARP Screening Officer who oversees all ARP request from inmates, in which she attested that the records provided were a complete accounting of the ARPs Bargher filed from 2013 through 2015, and that the June ARP did not exist in their records. Accordingly, Defendants reasserted that the prescription period was only suspended from November 3,

2015, the date Bargher filed ARP 819, until November 4, 2015, the date it was rejected. Defendants additionally argued, in the alternative, that even if Bargher's claims were not prescribed, they should be dismissed for Bargher's failure to exhaust administrative remedies as required under the Prison Litigation Reform Act (PLRA).

In his response, Bargher continued to declare that he had, in fact, submitted the June ARP even though it was not reflected in the prison's records. Bargher posited that the June ARP and the two prior ARPs about Veal were absent from the records not because he had not submitted them, but because the records themselves had likely been tampered with by Defendants.

In support of this allegation, Bargher submitted an additional affidavit detailing an incident that occurred after he filed his original complaint, when White allegedly demonstrated his willingness and ability to sabotage Bargher's prison records. Bargher asserted that, on January 1, 2017, shortly before he was later released from prison, White called him into the security office. White also called in his wife, who worked in the prison's records department, and he began looking through Bargher's prison file on the computer. White then printed out about twenty pages of Bargher's files, deleted the electronic copies, and "rip[ped] up all of [the] file papers and thr[ew] them in the trash." White then demanded Bargher's new home address and took Bargher's birth certificate from his file. When Bargher was released two weeks later, the birth certificate was still missing from his personal packet of papers provided to him.

The district court issued a ruling granting Defendants' motions for summary judgment and dismissing Bargher's claims with prejudice. The district court emphasized that there was no record in the prison's files of the June ARP, and that Bargher's "self-serving attestation" stating that he filed an ARP in June 2015 was insufficient to satisfy this burden to prove that the prescription period had been suspended for anything more than the two days

No. 17-30455

in November when ARP 819 was pending.  Alternatively, the district court concluded that even if Bargher had submitteed the June ARP and his claims were not prescribed, he had failed to show that he exhausted the administrative remedies required of inmates under the PLRA.  Bargher filed a timely notice of appeal.

## DISCUSSION

### A. Suspension of the Prescription Period

A district court's grant of summary judgment is reviewed de novo. *Grogan v. Kumar*, 873 F.3d 273, 277 (5th Cir. 2017) (citations omitted). Summary judgment is only appropriate if the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.* (quoting Fed. R. Civ. P. 56(a)).  When considering a motion for summary judgment, a court must make all reasonable factual inferences from the evidence in the light most favorable to the non-movant.  *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328–29 (5th Cir. 2017) (citations omitted).  However, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).

Notably, Defendants have not offered any evidence to dispute Bargher's detailed account of Veal's attack and the Defendants' role in orchestrating it. In viewing the evidence in the light most favorable to Bargher, we must therefore infer for the purposes of our review that Defendants arranged this attack precisely as Bargher describes.  *See Austin*, 864 F.3d at 328–29.  The only dispute before this court is whether Bargher is prescribed from seeking judicial relief for Defendants' alleged conduct.

Because there is no federal statute of limitations for actions brought pursuant to § 1983, federal courts borrow the forum state's general personal injury limitations period.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Owens v.*

7

*Okure*, 488 U.S. 235, 249–50 (1989).  The forum state's applicable tolling provisions are also given full effect.  *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 421 (5th Cir. 2016) (internal quotation marks and citation omitted).  Louisiana's one-year liberative prescription period thus applies to Bargher's § 1983 action.  *See id.*; LA. CIV. CODE ANN. art. 3492; *see also* LA. CIV. CODE ANN. art. 3447 ("Liberative prescription is a mode of barring of actions as a result of inaction for a period of time.").  "This prescription commences to run from the day injury or damage is sustained."  La. Civ. Code Ann. art. 3492.  "If a prescriptive period consists of one or more years, prescription accrues upon the expiration of the day of the last year that corresponds with the date of the commencement of prescription."  La. Civ. Code Ann. art. 3456.

Prescription is suspended upon the filing of a prisoner's grievance "until the final agency decision is delivered."  La. Rev. Stat. Ann. § 15:1172(E); *see Allen v. State*, 107 So. 3d 106, 109–10 (La. Ct. App. 2012).  "The period of suspension is not counted toward accrual of prescription."  La. Civ. Code Ann. art. 3472; *cf.* La. Civ. Code Ann. art. 3466 ("If prescription is interrupted, the time that has run is not counted.  Prescription commences to run anew from the last day of interruption.").

There is no dispute that Bargher's § 1983 action accrued on April 18, 2015, and that the applicable prescription period, if not suspended, expired April 18, 2016.  Bargher argues, however, that there is a genuine dispute as to whether he submitted an internal grievance on June 12, 2015 (the June ARP), which the district court acknowledged would have suspended the prescription period and rendered his claims timely.  We agree.

In finding otherwise, the district court improperly concluded that a party's "self-serving" sworn statements cannot create a genuine dispute of material fact.  Notably, the unpublished case that the district court relied on discussed a "*conclusory*, unsworn affidavit."  *Tyler v. Cedar Hill Independent*

*Sch. Dist*, 426 F. App'x 306, 309 (5th Cir. 2011) (per curium) (emphasis added) (citing *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005). Simply being "self-serving," however, does not prevent a party's assertions from creating a dispute of fact. *See Dallas/Fort Worth Int'l Airport Bd. v. INet Airport Sys., Inc.*, 819 F.3d 245, 253 n.14 (5th Cir.) ("Evidence proffered by one side to support or defeat a motion for summary judgment will inevitably appear 'self-serving.'")). A plaintiff in car wreck case who asserts that she had a green light and that the defendant ran a red light is also making highly "self-serving" statements, but no one would say that the district court can ignore them. Similarly, Bargher's statements that he submitted unrecorded ARPs and that White can and has tampered with his prison records are not merely "conclusory allegations, speculation, and unsubstantiated assertions," *see Douglass*, 79 F.3d at 1429, but instead detailed testimony from his personal knowledge.

Further, Bargher's affidavits are not the only evidence to support his account of the facts. Though the prison's records submitted by Defendants indisputably include no mention of Bargher submitting the June ARP, it is clear that he did write the June ARP shortly after the attack. The document in question is included in the record, prepared in the same handwriting as Bargher's recorded ARPs and postmarked to his attorney June 25, 2015. Though this does not of course prove that he followed the correct procedures to submit the June ARP through E.H.C.C.'s internal grievance system, it certainly lends credence to his version of events when viewed in the light most favorable to him. The record also demonstrates that Bargher has consistently maintained both before and during this lawsuit—in letters to his lawyer, in his ARPs that are on record with the prison, and in his affidavits—that he submitted the June ARP and the prior ARPs about Veal but received no response.

The district court found that there was no mention of the June ARP in Bargher's complaint. The complaint specifically references two ARPs, one that was rejected on October 8, 2015 and one on November 4, 2015. The complaint does not state when either ARP was filed. From the record that was subsequently developed, we know that these ARPs are ARP 744 and ARP 819, respectively—not the June ARP.

We believe, however, that the lack of transparency in E.H.C.C.'s grievance procedures could reasonably explain this apparent omission. Bargher would have known from the rejection notices he received that an ARP designated as "EHCC-2015-744" was denied on October 8 and another, designated as "EHCC-2015-819" was denied on November 4. Bargher argues, however, that he previously believed that one of these rejections was for the June ARP, and only later during the litigation discovered that neither of these designations referred to the June ARP. There is other evidence that Bargher was genuinely confused about this: in one of his affidavits, he stated that he did not receive a response to the June ARP "until November 2015"—the month he actually received the rejection for ARP 819. We are not convinced that Bargher's mention in his complaint of only the two ARPs rejected in October and November would prevent a reasonable jury from finding that he submitted the June ARP.

Bargher has further provided summary judgment evidence that would permit a reasonable jury to conclude that White had both the opportunity and the motive to either intercept the June ARP to prevent it from being logged or to delete it from the records. In a sworn affidavit, Bargher claims that he personally saw White, with help from his wife who works in the records department at E.H.C.C., tamper with his records and destroy portions of them. We reiterate that, when viewing all evidence in the light most favorable to Bargher as we must do, we draw the inference that White and the other guards

did indeed arrange for Veal to attack Bargher. It is then certainly reasonable to infer that White had every reason to cover up any record of the June ARP describing his involvement in this attack.[1]

Because we find a genuine issue of material fact as whether Bargher filed the June ARP, the district court erred by dismissing Bargher's claims as barred by the prescription period.

### B. Failure to Exhaust Administrative Remedies

The district court alternatively found that, even if a reasonable jury could find that Bargher filed the June ARP, dismissal was proper because Bargher failed to exhaust his administrative remedies before filing suit. We review a dismissal for failure to exhaust administrative remedies de novo. *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999).

Under the Prison Litigation Reform Act (PLRA): "No action shall be brought with respect to prison . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 84 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90. The petitioner must have "pursue[d] the grievance remedy to conclusion"—substantial compliance with administrative procedures is not enough. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

Louisiana's Administrative Remedy Procedure has two steps, and a prisoner has not exhausted his remedies until he has completed both. *See Dillon v. Rogers*, 596 F.3d 260, 265–66 (5th Cir. 2010). A prisoner first submits

---

[1] Though ARP 819 also describes the attack and implicates White, it was filed too late for Bargher to receive relief, which would weaken any motive to interfere with its filing. *See* La. Admin. Code tit. 22, pt. I, § 325(J)(1) (a grievance at this step shall be filed "within 90 days of an alleged event.").

No. 17-30455

a request to the warden briefly setting out the basis for the claim and the relief sought—these are the "ARPs" discussed at length above. *Id.* at 265. The warden then has 40 days to respond. *Id.* at 265–66. If the inmate is dissatisfied with the warden's response, or no response is received within the 40-day time period, the inmate may proceed to the second step and appeal to the Secretary of the Louisiana Department of Public Safety and Corrections. *Id.* at 266. Critically, a prisoner who does not receive a timely response to his initial ARP is not prevented from filing a second-step ARP. *See id.*; LA. ADMIN. CODE tit. 22, pt. I, § 325(J)(1)(c) ("expiration of response time limits shall entitle the offender to move on to the next step in the process.").

Bargher acknowledges that he never proceeded to the second step of the grievance process, but instead incorrectly contends that the second step was not available until the prison responded to his first-step grievance. However, when prison officials failed to timely respond to his first-step grievance, Bargher was entitled under § 325(J)(1)(c) to proceed to the second step. *See Dillon*, 596 F.3d at 266. Because Bargher thus filed his §1983 complaint prior to the completion of the administrative grievance process, the district court properly found that Bargher failed to exhaust the required administrative remedies before bringing this suit while incarcerated.

The district court dismissed Bargher's suit with prejudice. Failure to exhaust, however, warrants dismissal without prejudice, which permits the litigant to refile if he exhausts or is otherwise no longer barred by the PLRA requirements. *See Wright*, 260 F.3d 357; *Booth v. Churner*, 532 U.S. 731, 735 (2001).

This distinction between dismissal with or without prejudice is critical in Bargher's case because he was released from prison during the pendency of this suit. Bargher's subsequent release does not relieve him of the requirement to exhaust administrative remedies for this current legal action that he

12

initiated while in prison. *Williams v. Henagan*, 595 F.3d 610, 619 (5th Cir. 2010) (holding that when plaintiff "was incarcerated when he brought this suit . . . [his] release during the pendency of the suit does not relieve him the obligation to comply with 42 U.S.C. § 1997e['s exhaustion requirements]"). By its plain language, however, the PLRA's restrictions do not apply to actions filed by former inmates following their release. 42 U.S.C. § 1997e(a) ("No action shall be brought . . . *by a prisoner* . . . until such administrative remedies as are available are exhausted"); *see, e.g.*, *Norton v. City of Marietta,* 432 F.3d 1145, 1150 (10th Cir. 2005) ("In light of the PLRA's plain language . . . . a plaintiff who seeks to bring suit about prison life after he has been released and is no longer a prisoner does not have to satisfy the PLRA's exhaustion requirements before bringing suit"); *Nerness v. Johnson,* 401 F.3d 874, 876 (8th Cir. 2005) (per curium) (PLRA's exhaustion requirements do not apply when someone files suit after release from confinement); *Witzke v. Femal,* 376 F.3d 744, 750 (7th Cir. 2004) (same); *Greig v. Goord,* 169 F.3d 165, 167 (2d Cir. 1999) (same); *Duvall v. Dallas Cty.*, No. CIV.A. 305CV2431B, 2006 WL 3487024, at *2 (N.D. Tex. Dec. 1, 2006) (same); *see also Janes v. Hernandez*, 215 F.3d 541, 542 (5th Cir. 2000) ("Because Janes was not a prisoner when this complaint was filed, the [attorney's] fee limits of the [Prison Litigation Reform] Act did not apply.").

Accordingly, though his present action must be dismissed, Bargher would not be bound by the PLRA's exhaustion requirements if he were to immediately refile. *See Cox v. Mayer,* 332 F.3d 422, 424–25 (6th Cir. 2003) (holding that dismissal was required when plaintiff filed unexhausted claims while a prisoner but that his release during pendency of the suit meant he could subsequently refile his claims without exhausting: "no longer in prison, plaintiff ha[s] no remedies to exhaust"); *see also Ahmed v. Dragovich,* 297 F.3d 201, 210 (3d Cir. 2002) ("Although Ahmed would have been free of the

strictures of the PLRA['s exhaustion requirements] if he had filed a timely complaint after his release from prison, he is bound by the PLRA because his suit was filed . . . almost three years before he was released."). Because this is therefore not an occasion where "modification of the judgment would be futile," the district court's judgment should be amended to dismissal without prejudice. *See, e.g.*, *Rankin v. Pearson*, 612 F. App'x 204, 206 (5th Cir. 2015) (declining to find that the district court erred in that case by dismissing with prejudice because the plaintiff there was required but would be unable to exhaust his administrative remedies).

**\*\*\***

For these reasons, we VACATE the district court's dismissal with prejudice and REMAND with instructions to dismiss Bargher's action without prejudice to his ability to timely refile.

14