# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 4, 2025

Lyle W. Cayce
Clerk

No. 24-50770

DELTON YORK,

*Plaintiff—Appellant*,

*versus*

CHARLES EZELL, *Director of the United States Office of Personnel Management*,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:22-CV-451

Before WIENER, DOUGLAS, and RAMIREZ, *Circuit Judges*.

PER CURIAM:*

Plaintiff-Appellant Delton York, a former employee with the United States Office of Personnel Management ("OPM"), brought this employment discrimination suit against the Director of OPM, in his official capacity, under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA"). York

---

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-50770

alleged that his employer unlawfully refused to recommend him for a promotion because of his race and age. The district court granted Appellee's motion for summary judgment. We AFFIRM.

I

York, an African-American man in his forties, was employed as a career ladder Human Resources Specialist in OPM's Organization Design & Position Classification ("ODPC") unit. York was hired by Jason Parman, the Human Resources Strategy Group Manager and second-line supervisor for ODPC. At all times relevant to this suit, York's General Schedule ("GS") grade level at OPM was GS-12. Given that York held a "career ladder" position, he could have been promoted to a successive grade level, at management's discretion and without further competition, provided that certain criteria were met. The criteria for such promotions are set by 5 C.F.R. § 335.104 and the OPM Human Resources Handbook ("Handbook"). According to the regulation:

> No employee shall receive a career ladder promotion unless his or her current rating of record . . . is "Fully Successful" (level 3) or higher. In addition, no employee may receive a career ladder promotion who has a rating below "Fully Successful" on a critical element that is also critical to performance at the next higher grade of the career ladder.

5 C.F.R. § 335.104.2.[1] Per the Handbook, in addition to having a fully successful summary rating at their current grade, employees "must also demonstrate the ability to perform acceptably at the next higher grade" to be eligible for a career ladder promotion.

---

[1] The "current rating of record" refers to the summary rating from an employee's most recent annual performance appraisal. *See* 5 C.F.R. § 430.203.

No. 24-50770

From 2010 to the fall of 2013, York was directly supervised by Michelle Arcara, the first-line supervisor in ODPC. During that time, Arcara rated York as "fully successful" in his annual performance appraisals for Fiscal Years ("FY") 2011, 2012, and 2013. After Acara left OPM in December 2013, a series of acting supervisors—Yvonne Ryan, Firooz Basri, Morris Blakely, and Rachelle Booth—were appointed to serve on a rotating basis for the remainder of the first half of FY 2014. Parman testified that these appointments were not competed for, but rather were "informal assignments" meant to be "a stopgap measure" while the unit evaluated whether Arcara would return. Once it became clear that Acara's departure was indefinite, the unit held a competitive process, in which employee Laura Knowles applied for, and was selected to serve as, the first-line supervisor in ODPC for the remainder of FY 2014. Compared to the informal appointees, Knowles spent the longest amount of time supervising York.

Parman was the final decision-maker concerning York's eligibility for a promotion to the GS-13 level at the end of FY 2014, and he was not required to consider any feedback from Knowles or the previously acting supervisors. Nonetheless, in April 2014, Parman solicited and received input regarding York's performance from the various individuals who held supervisory roles in ODPC during FY 2014. Knowles recommended against promoting York to GS-13 based on her assessment of his ability to work autonomously, meet deadlines, and engage directly with ODPC's customer agencies without a supervisor present. Ultimately, Parman decided not to recommend York for a GS-13 promotion on or about September 16, 2014. He reasoned that York demonstrated "an inability to perform the more complex aspects of consulting work in organization design and position classification," and "to correctly perform certain basic functions of his job (i.e. submitting timely and correct billing statements, work reports, travel authorizations, and vouchers)."

3

No. 24-50770

York administratively challenged Parman's refusal to promote him.[2] After exhausting that process, he filed this suit against Defendant-Appellee Charles Ezell, in his official capacity as OPM Director, in the United States District Court for the Western District of Texas. York alleged that Appellee's refusal to recommend him for a promotion constituted discrimination based on race and age. In support, York claimed that his colleague Jason Hohman, a white male under 40 years of age, was a similarly situated employee who received a promotion from GS-12 to GS-13 in June 2013. Appellee moved for summary judgment, arguing that he was entitled to judgment as a matter of law because Hohman was not a similarly situated employee, and thus York could not show that any comparator was elevated to GS-13 within ODPC under similar circumstances. Appellee also contended that there was a legitimate, non-discriminatory reason for the decision not to elevate York to GS-13, and that York failed to demonstrate that the tendered reason was pretextual for discrimination.

The district court granted summary judgment in favor of Appellee. First, the court found that York failed to establish a prima facie case of race or age discrimination because, in light of substantial evidence indicating disparate job performances between Hohman and York for purposes of their consideration for a GS-13 promotion, the two employees were not similarly situated. Second, even if York had established a prima facie case, the court concluded that he failed to show that Appellee's neutral reason for declining to promote him—concern for York's ability to perform his job adequately— was a pretext for discrimination. Proceeding pro se, York now appeals from

―――――――――――――――

[2] In an affidavit submitted in relation to York's administrative case with the Equal Employment Opportunity Commission ("EEOC"), Parman stated that each of the persons who rotated as acting ODPC supervisors for FY 2014 "stated that [York] was not ready to be promoted, as he had not demonstrated the competencies necessary to succeed at the GS-13 level."

4

the district court's entry of final judgment on July 30, 2024, in which the court dismissed his claims with prejudice.

## II

We review a district court's grant of summary judgment de novo. *Bargher v. White*, 928 F.3d 439, 444 (5th Cir. 2019), *as revised* (July 2, 2019). Summary judgment may be granted only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "When considering a motion for summary judgment, a court must make all reasonable factual inferences from the evidence in the light most favorable to the nonmovant." *Bargher*, 928 F.3d at 444. But "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Id.* (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)). Rather, the nonmovant "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

## III

Title VII discrimination cases "based on circumstantial evidence," such as York's race-based claim for a failure to promote, "are subject to the *McDonnell Douglas* burden-shifting analysis." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004) (citing *Meinecke v. H & R Block of Hous.*, 66 F.3d 77, 83 (5th Cir. 1995) (per curiam)). The same analysis applies to York's age discrimination claim under the ADEA. *See Ross v. Univ. of Texas at San Antonio*, 139 F.3d 521, 525 (5th Cir. 1998).

Under that framework, the employee-plaintiff must first make a prima facie case of discrimination, after which the burden shifts to the employer-defendant to provide a legitimate, non-discriminatory reason for the adverse

employment decision. *Davis*, 383 F.3d at 317 (citing *Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 342 (5th Cir. 2002)). "If the employer is able to state a legitimate rationale for its employment action," the employee has the burden of showing that the proffered reason for the employer's decision was pretextual for discrimination. *Id.* To show pretext on summary judgment, "the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir.2002).

Here, "[w]e need not reach the question [of] whether [York] made out a prima facie case" because, for the reasons below, we agree with the district court that York did not satisfy his ultimate burden of showing that Appellee's neutral reason for not promoting him was a mask for discrimination. *Tortorici v. Harris*, 610 F.2d 278, 279 (5th Cir. 1980) (per curiam); *see also Ebbs v. Folger Coffee Co.*, No. 97-30945, 1998 WL 156335, 140 F.3d 1037, *2 (5th Cir. 1998) (unpublished) (pretermitting the issue of whether employee established a prima facie case of racial discrimination because he failed to show that employer's legitimate reason for discharging him was pretextual).

IV

Assuming arguendo that York has shown a prima facie case of discrimination under Title VII and the ADEA, Appellee has the burden of articulating a non-discriminatory reason for the decision not to recommend York for a GS-13 promotion. An employee's "poor job performance" is a legitimate, non-discriminatory reason for an adverse employment action. *Little v. Republic Ref. Co.*, 924 F.2d 93, 96 (5th Cir. 1991) (finding that employer's termination of employee for "poor job performance" was a legitimate reason). That principle applies to the adverse employment action alleged in this case: failure to promote. *See Haire v. Bd. of Sup'rs of La. State*

*Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 364 (5th Cir. 2013) ("Failure to promote is clearly an adverse employment action." (citing *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) ("Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands."))). Parman declined to promote York based on his concerns for the sufficiency of York's job performance—a neutral basis for his decision that is thoroughly substantiated by the record. *See Little*, 924 F.2d at 96. As summarized by the district court:

> Knowles testified about Plaintiff's difficulty managing administrative tasks and her need to "follow up quite a bit with [Plaintiff] to seek clarification on items." Knowles also testified about Plaintiff's struggles to work autonomously without supervision, communicate effectively with ODPC team members and customers, and meet timelines. In addition, Knowles emailed Parman in September 2014 regarding concerns about Plaintiff seeking reimbursement for a car rental in an amount that exceeded the prior approved amount. Parman echoed Knowles' concerns, identifying Plaintiff's "inability to perform the more complex aspects of consulting work in organization design and position classification" as well as "demonstrat[ing] an inability to correctly perform certain basic functions of his job (i.e. submitting timely and correct billing statements, work reports, travel authorizations, and vouchers)."

Instead of rebutting these concerns with evidence that Parman's true motive was discriminatory, York contends that a genuine dispute of material fact exists because two of the ODPC acting supervisors, Morris Blakely and Rachelle Booth, testified that they believed York was promotion-ready in FY 2014. But notably, York does not dispute that second-line supervisor Parman was the sole person responsible for the decision to refrain from granting him a career ladder promotion in FY 2014— not the acting, first-line supervisors who were informally appointed and served only on a rotational basis. As it is

uncontested that the acting supervisors were not the final decision-makers regarding York's promotion-readiness, the opinions of Blakely and Booth on that subject are inconsequential. *See Lavigne v. Cajun Deep Founds., L.L.C.*, 654 F. App'x 640, 647 (5th Cir. 2016) (per curiam) ("'[S]tatements by non[-]decision makers, or statements by decision makers unrelated to the decisional process itself [do not] suffice to satisfy the Plaintiff's burden' of showing discriminatory intent." (alterations in original) (quoting *Rios v. Rossotti*, 252 F.3d 375, 382 (5th Cir. 2001))).

York's appellate brief makes two additional arguments for his claim that Parman's refusal to promote him was pretextual—both are unavailing.

First, York insists that Booth "heard Parman make a statement to York (and others) at the worksite that caused Booth to understand that Parman was only interested in hiring and promoting Caucasian employees."[3] York's formulation of the meaning behind this purported statement by Parman belies the record.[4] And, in any event, Booth and York's subjective belief about what the alleged statement denotes is irrelevant for the requisite

---

[3] Though York does not specify the contents of this alleged statement, in his opposition to Appellee's motion for summary judgment, he asserted that the statement showcases York's preference for hiring employees "from his majority-white alma mater because 'they have the same values.'"

[4] In his deposition, Parman testified that, during a substantial growth period from 2006 through 2010, OPM concentrated on hiring from the industrial and organizational psychology graduate programs of four universities: the University of Maryland, Missouri State University (Parman's alma mater), the University of Wisconsin-Whitewater, and the University of Northern Iowa. Contrary to York's bald claim that this targeted recruiting initiative suggested Parman's preference for hiring and promoting Caucasian employees, Parman's testimony explained that the initiative was based on the skills taught in those graduate programs: "data evaluation analysis and analytics skill and capability . . . human factors assessment and the principles of assessment and measurement [and] the ability to write both technically and persuasively in deep technical subjects related to HR[,] related to assessment, [and] related to measurement."

showing of pretext. *See Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004) (finding that employee's "subjective belief" about supervisor's race-or-age-based animus was "insufficient to create an inference of . . . discriminatory intent.") (quotations and citation omitted).

Second, York claims to have "produced evidence of improper witness tampering" by Parman "upon which a trier of fact could conclude an improper motive." Given that York makes this argument without specifying what the alleged evidence entails, it is a baseless assertion that fails to move the needle on his burden of showing pretext. *See Bargher*, 928 F.3d at 444. Moreover, York did not present this argument to the district court in his opposition to Appellee's motion for summary judgment, and thus he cannot assert it for the first time on appeal. *See Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 669 (5th Cir. 2004).

V

In sum, even if York could make a prima facie case for his claims alleging race and age discrimination under Title VII and the ADEA, his claims fail because he cannot show that Appellee's neutral reason for refusing to promote him was pretextual for discrimination. We AFFIRM.